UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

GARY SESSOMS,

                                        **Plaintiff,**

                  v.                                                    9:01-CV-1892 (FJS/DEP)

**DANIEL A. SENKOWSKI, Superintendent; PAUL ANNETTS, 1st Deputy Superintendent; and DOCTOR K. LEE, Facility Medical Doctor,**

                                        **Defendants.**
_____

**APPEARANCES**                                    **OF COUNSEL**

**GARY SESSOMS**[1]
4676 Albany Post Road
Apt. No. 4D2
Hyde Park, New York 12538
Plaintiff *pro se*

**OFFICE OF THE NEW YORK**           **CHARLES J. QUACKENBUSH, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**SCULLIN, Chief Judge**

---

[1] On July 19, 2004, Plaintiff was released to the supervision of the New York State Division of Parole. *See* Defendants' Statement of Undisputed Material Facts at ¶ 1 (citing Quackenbush Declaration, Ex. A).

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Currently before the Court is Defendants' motion for summary judgment.[2] *See* Dkt. No. 59. Despite requesting and being granted an extension of time in which to do so, *see* Dkt. No. 61, Plaintiff has failed to file any papers in response to the pending motion.[3]

**II. BACKGROUND**

On December 12, 2001, Plaintiff filed his complaint in this action, pursuant to 42 U.S.C. § 1983, in which he alleged that Defendants violated his First and Eighth Amendment rights. With regard to his Eighth Amendment claims, Plaintiff asserted that, while he was incarcerated in the Special Housing Unit ("SHU") at Clinton Correctional Facility ("CCF"), Defendants ignored his request to be treated for a toe infection and canceled his appointment to receive follow-up treatment for a recent operation on his groin area. Additionally, Plaintiff contended that Defendants violated his First Amendment rights by failing to provide him with access to the courts. In this regard, Plaintiff asserted that, from the time that he entered CCF, Defendants denied his requests for legal materials, including forms to file in court, law books, pens, paper, and envelopes, and denied him adequate access to prison law clerks.

Subsequently, Defendants moved to dismiss Plaintiff's complaint on several grounds. On

---

[2] Defendants' Notice of Motion included the required notice to Plaintiff regarding the possible consequences of his failure to file papers in opposition to their motion for summary judgment. *See* Dkt. No. 59, Defendants' Notice of Motion, at 1-2.

[3] The Court extended Plaintiff's time to file his response to Defendants' motion until February 4, 2005. *See* Dkt. No. 61.

May 15, 2002, Magistrate Judge Peebles issued a Report and Recommendation in which he recommended that this Court grant in part and deny in part Defendants' motion. *See* Dkt. No. 21. Both Plaintiff and Defendants filed objections to that Report and Recommendation. *See* Dkt. Nos. 22, 24.[4] In a Memorandum-Decision and Order dated September 29, 2003, this Court adopted Magistrate Judge Peebles' May 15, 2002 Report and Recommendation in its entirety and granted Defendants' motion to dismiss Plaintiff's First Amendment claim against Defendant Lee for lack of personal involvement, granted Defendants' motion to dismiss Plaintiff's First Amendment claim against Defendants Senkowski and Annetts with leave to replead, ordered Plaintiff to file and serve his amended complaint within sixty days of the date of its Order, granted Defendants' motion to dismiss Plaintiff's claims against all of them in their official capacities, and denied Defendants' motion in all other respects. *See* Dkt. No. 30.

As instructed, Plaintiff submitted an amended complaint, which the Court accepted for filing on November 13, 2003. *See* Dkt. No. 35. Defendants filed an answer to the amended complaint. *See* Dkt. No. 36.

After the parties engaged in discovery, Defendants filed the pending motion for summary judgment. As noted, Plaintiff has not filed any papers in opposition to this motion, despite being granted an extension of time in which to do so. The following constitutes the Court's written decision regarding Defendants' motion.

---

[4] Plaintiff requested, and this Court granted his request for, an extension of time in which to file his objections to the Report and Recommendation. *See* Dkt. No. 23.

### III. DISCUSSION

**A.     Standard of review**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden to demonstrate through ""'pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,'"" that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quotation omitted). "When a party has moved for summary judgment on the basis of asserted facts supported as required by Fed. R. Civ. P. 56(e) and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992) (citation omitted); *see* L.R. 7.1(a)(3) ("<u>Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party</u>.").

When considering a motion for summary judgment, "the court must 'resolve[] all ambiguities and draw [] all factual inferences in favor of the nonmoving party.'" *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998) (quotation omitted). Furthermore, where a party is proceeding *pro se*, the court must "read his supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (citation omitted); *see also Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991) (noting that mere conclusory allegations, which the record does not

support, are insufficient to defeat a motion for summary judgment. (citations omitted)).

Nonetheless, to defeat a properly supported motion for summary judgment, even a non-movant, who is proceeding *pro se*, must "set forth specific facts showing that there is a genuine issue for trial" and cannot rest on "mere allegations or denials" of the facts that the movant submitted. Fed. R. Civ. P. 56(e); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case." (citation omitted)).

As noted, in the present case, despite the required notice of the consequences of failing to do so, Plaintiff has not filed any papers in opposition to the pending motion. Therefore, for purposes of this motion, the Court will accept, as true, the facts that Defendants have set forth in their Statement of Undisputed Material Facts.

**B.   Plaintiff's Eighth Amendment Deliberate Indifference to a Serious Medical Need Claims**

"The Eighth Amendment prohibits the infliction of 'cruel and unusual punishment,' . . . and applies to states through the Due Process Clause of the Fourteenth Amendment." *Trammell v. Keane*, 338 F.3d 155, 161 (2d Cir. 2003) (citation omitted). This includes the requirement that prison officials provide prisoners with humane conditions of confinement including "medical care[.]" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation and other citations omitted). When a plaintiff's Eighth Amendment claim is based upon his allegation that Defendants denied him medical care, he must demonstrate (1) a serious medical condition and (2) the defendants' deliberate indifference to that serious medical need. *See id.* at 834-35.

With respect to the "serious medical condition" prong of this claim, the court applies an objective standard and considers whether the plaintiff's medical condition is sufficiently serious. The Second Circuit has stated that a medical need is serious if it presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quotation omitted). Among the relevant factors that a court should consider in making this determination are "'[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" *Id*. (quotation and other citation omitted).

With respect to the "deliberate indifference" prong of such a claim, the court applies a subjective standard that requires a plaintiff to demonstrate that the defendants acted with the requisite culpable mental state, which is similar to that of criminal recklessness. *See Wilson v. Seiter*, 501 U.S. 294, 301-03 (1991) (citations omitted). Thus, the plaintiff must demonstrate that the defendants acted with reckless disregard to a known substantial risk of harm. *See Farmer*, 511 U.S. at 826. This requires "something more than negligence . . . but something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Furthermore, a showing of medical malpractice is insufficient to support an Eighth Amendment deliberate indifference claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance*, 143 F.3d at 703 (quotation omitted); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (quotation omitted).

Defendants contend that, at best, Plaintiff's amended complaint, and his use of the

modifiers "largely ignored" and "adequate action," alleges that, although he received medical treatment, this treatment was either delayed and/or did not adequately address his problems. *See* Defendants' Memorandum of Law at 8.  However, Defendants argue that neither delays in treatment nor an inmate's disagreement with the prison officials about the appropriate medical care is sufficient to state an Eighth Amendment claim. *See id.* at 8-9 & n. 8-9.  Moreover, Defendants claim that Plaintiff's assertion that he "received no medical attention for his toe (not even an aspirin) until two months later when [he] was released from (SHU) and was able to make it to medical sick call on his own," *see id.* at 8 n.8, is belied by the documentary evidence, which establishes that, in fact, "[b]etween 1/31/01, when plaintiff first complained of his toe infection, and March 16, when Dr. Lee operated on the toe, plaintiff was seen by medical staff on at least three occasions and received medication at least once." *See id.* (citing Lee Declaration, Ex. A).

On January 31, 2001, Plaintiff complained, for the first time, about a problem with his foot – specifically, he complained to a nurse practitioner that his big toe was swollen. *See id.* at 10.  On February 7, 2001, a physician saw Plaintiff about this complaint. *See id.*  On March 5, 2001, Plaintiff's Ambulatory Health Record ("AHR") indicates that his toenail was ingrown and that he had a "very red" throat infection; therefore, the medical staff provided him with medication and scheduled him to have his toenail removed. *See id.*  On March 16, 2001, his infected toenail was surgically removed under local anesthesia, and Plaintiff received an antiseptic to soak his foot and Keflex, an antibiotic. *See id.*  Finally, on March 28, 2001, and March 31, 2001, Plaintiff received follow-up examinations and treatment for his foot. *See id.*

With regard to Plaintiff's allegations concerning some painful swelling that he experienced as a complication of a surgical procedure to remove a hydrocele, a collection of fluid

in the membrane surrounding his testicle, and that Defendant Dr. Lee cancelled a trip to the urologist regarding this complaint, Defendants contend that Plaintiff's AHR reveals critical details which indicate that these assertions are false. *See id.* at 9. Plaintiff's AHR does, in fact, indicate that, on December 6, 2000, he was examined at CCF upon his arrival from Fishkill Correctional Facility ("FCC"). At that time, the medical staff observed that he still had stitches from his November 21, 2000 scrotal surgery. *See id.* Subsequently, on December 11, 2000, a physician examined Plaintiff and noted that there were no sutures, that the surgical area had healed well, and that there was mild tenderness. *See id.* (citing Lee Declaration, ¶ 13). Furthermore, when the medical staff saw Plaintiff on December 18, 21, and 27, 2000, and January 2, 2001, he did not express any complaints about his testicle. *See id.* Nonetheless, on January 3, 2001, Defendant Dr. Lee requested a urological follow-up consultation for Plaintiff. *See id.* Approximately two weeks later, on January 19, 2001, Plaintiff complained for the first time about a swollen testicle and was scheduled to see a physician. *See id.* Subsequently, on January 31, 2001, Plaintiff complained that his testicle was still painful; however, he denied that he was experiencing either fever and/or chills, abdominal pain or difficulty urinating. *See id.* at 10.

On March 27, 2001, a private urologist examined Plaintiff based upon Defendant Dr. Lee's January 3, 2001 request. *See id.* (citing Lee Declaration, ¶¶ 14, 18). The urologist prescribed a 7-day regimen of Keflex and recommended a follow-up ultrasound examination of Plaintiff's scrotum; the prescription and recommendation were noted in Plaintiff's March 28, 2001 AHR entry. *See id.* Plaintiff received an ultrasound scan on April 4, 2001; and, as a result of this scan, a physician concluded that there was a non-cancerous variocele on Plaintiff's right

testicle. *See id.* Finally, Defendant Dr. Lee subsequently requested another urological follow-up for Plaintiff, which took place on August 21, 2001. *See id.*

For purposes of this motion, the Court will assume that Plaintiff's allegations about his ingrown toenail and his testicular surgery are sufficient to establish that he suffered from a serious medical condition.[5] Nonetheless, Plaintiff's deliberate indifference claims cannot withstand Defendants' motion for summary judgment because the documentary evidence, to which Plaintiff has offered no response and is therefore uncontroverted, demonstrates that Defendants were **not** deliberately indifferent to Plaintiff's medical needs. At most, Plaintiff's allegations show some delay in the provision of medical services; however, this delay was no longer than a person outside the prison walls could expect to encounter when scheduling specialized tests and appointments with specialists. Accordingly, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's Eighth Amendment deliberate indifference claims.[6]

---

[5] The Court notes, however, that it is skeptical that an "ingrown toenail" meets the definition of a "serious medical condition."

[6] Since the Court has concluded that Plaintiff's claims against Defendant Dr. Lee do not rise to the level of "deliberate indifference" and that any delay that Plaintiff experienced in receiving medical attention was minimal at best, his claims against Defendant Senkowski and Defendant Annetts fail as well. Alternatively, Defendant Annetts submitted the records that he assembled in January 2002, after being served with process in this action; and these records clearly demonstrate that Defendant Senkowski had no personal involvement in investigating and/or addressing Plaintiff's complaints and that it was his practice to delegate such matters to senior executive staff. *See* Defendants' Memorandum of Law at 11. Finally, these records show that Defendant Annetts, who at all relevant times was First Deputy Superintendent at CCF, in fact, took action to investigate and resolve Plaintiff's complaints; e.g., he communicated with the facility's medical staff and learned that they were addressing Plaintiff's complaints. *See id.* Since Plaintiff has not submitted any evidence to controvert either Defendant Annetts' statements or the records that he submitted in support of those statements, the Court concludes that Defendants

(continued...)

**C.    Plaintiff's First Amendment denial-of-access-to-the-courts claims**

Interference with legal mail implicates an inmate's First and Fourteenth Amendment rights to access to the courts and free speech. *See Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). The Second Circuit has stated that, in order to state a claim for denial of access to the courts via interference with legal mail, the plaintiff must show that the defendants caused actual injury, i.e., that the defendants "'took or [were] responsible for actions that "hindered [the plaintiff's] efforts to pursue a legal claim."'" *Id.* (quotation and other citations omitted); *see also Cancel v. Goord*, No. 00 CIV. 2042, 2002 WL 171698, *4 (S.D.N.Y. Feb. 4, 2002) (holding that the plaintiff's "general allegation that defendants 'prevented him from researching and filing a timely response to a Criminal motion resulting in an adverse decision' is not enough to sustain a § 1983 cause of action for denial of access to the courts due to interference with an inmate's mail. . . . [and that] [a] mere delay in being able to work on [a] legal action does not rise to the level of a constitutional violation. . . ." (internal citations omitted)).

Plaintiff claims that Defendants Senkowski and Annetts violated his First Amendment right of access to the courts by depriving him of legal forms, books, pens/pencils and envelopes during the two months he was housed in CCF's SHU. *See* Plaintiff's Amendment Complaint at ¶¶ 15-20. Specifically, Plaintiff alleges that he was "prevented from filing two CPLR Article 78s proceeding [sic] in regards to the affirmation of the two disciplinary proceedings after the appeals." *See* Defendants' Memorandum of Law at 14 (footnote omitted).

In response to these allegations, Defendants assert that there is documentary evidence that

---

[6](...continued)
Senkowski and Annetts are entitled to summary judgment with respect to Plaintiff's deliberate indifference claims on this ground as well.

indicates that Plaintiff's claims are false. *See id.* at 15. Defendant Annetts, to whom Defendant Senkowski delegated the responsibility for investigating and responding to Plaintiff's complaints, submitted records that demonstrate that he investigated Plaintiff's complaints and that Plaintiff did, in fact, receive legal supplies in a regular manner. *See id.* (citing Annetts Declaration, Ex. A (plaintiff signed "Arrival Issue" form acknowledging receipt of envelopes, writing paper, etc.). Moreover, with regard to Grievance CL-42702-01, Defendant Senkowski advised Plaintiff on January 22, 2001, that supplies were issued every two weeks and that forms were available on the cell block. *See id.* In addition, at the conclusion of its investigation of this grievance, the Central Office Review Committee determined that

> "the grievant has failed to indicate on what dates he was not able to receive supplies. . . . [he] is advised to contact the area supervisor with any additional concerns regarding his access to supplies. . . . Law Library records indicate the grievant has received reference materials on several dates. The Law Library Supervisor added that he was not in receipt of any requests for writing supplies or any other complaints from the grievant."

*See id.* (quoting Annetts Declaration, ¶ 16 and Ex. A).

Based upon these records, Defendants contend that, at best, Plaintiff will only be able to prove that he "subjectively" believed that his access to materials was insufficient. *See id.* at 16. However, as Defendants point out, "[d]issatisfaction with legal resources actually provided is not the functional equivalent of a deliberate and malicious interference with access to the Courts." *See id.* (citing *Morello v. James*, 810 F.2d 344, 346-47 (2d Cir. 1987)).

Alternatively, Defendants argue that Plaintiff has not shown that he suffered any "actual injury" as a result of their alleged failure to provide him with the requested materials. In fact, although the Court provided Plaintiff with an opportunity to amend his complaint and

-11-

Defendants served a Request to Produce on him on June 23, 2004, Plaintiff has never identified specific injuries that he suffered in any non-frivolous litigation efforts. *See id.* at 17 (footnote omitted).[7] Defendants also assert that, despite Plaintiff's general allegations that Defendants' actions prevented him from filing two CPLR Article 78 proceedings regarding two disciplinary proceedings, he has not identified which disciplinary convictions he wanted to challenge, which, in turn, prevents Defendants from examining the merits of those challenges. *See id.*

A review of Plaintiff's disciplinary record indicates that, between August 2000, and October 2000, he was convicted of the charges set forth in three different misbehavior reports at FCF and that the appeals from all three of those reports were completed at least one month prior to Plaintiff's transfer to CCF. *See id.* Moreover, the keeplock and loss of privilege sentences on two of these convictions were still in effect when Plaintiff arrived at CCF *See id.* (footnote omitted).

Based upon the uncontroverted evidence in the record, the Court concludes that Plaintiff has failed to establish either that Defendants denied him access to the courts or, in the alternative, that, even if they did deny him such access, he was injured in any manner as a result of Defendants' conduct. Accordingly, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's First Amendment access-to-the-court claims.

### IV. CONCLUSION

---

[7] Defendants' Request to Produce sought, among other things, to have Plaintiff "'identify any litigation efforts which plaintiff contends suffered impediments caused by actions of defendants in this case; produce copies of documents relating to such litigation.'" *See* Defendants' Memorandum of Law at 17 n.14 (quoting Quackenbush Declaration, ¶ 16 and Ex. C).

Accordingly, based upon the entire record in this file, Defendants' submissions in support of their motion for summary judgment, the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendants' motion for summary judgment is **GRANTED** in its entirety; and the Court further

**ORDERS** that the Clerk of the Court enter judgment in Defendants' favor and close this case.

**IT IS SO ORDERED.**

Dated: October 14, 2005
       Syracuse, New York

                                     Frederick J. Scullin, Jr.
                                     Chief United States District Court Judge